UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>OWEN M. GRIGSBY and<br><br>HIMMEH KUAWOGAI,<br><br>Defendants. | CRIMINAL NO 24-CR-00186 |

### UNITED STATES' SENTENCING MEMORANDUM

Defendants Owen M. Grigsby ("Grigsby") and Himmeh Kuawogai ("Kuawogai") (collectively, the "Defendants"), worked together to file fraudulent and misleading applications to obtain an Economic Injury Disaster Loan ("EIDL") and two Payment Protection Program ("PPP") loans during the COVID-19 pandemic. As a result of Grigsby's and Kuawogai's fraudulent and misleading applications, Grigsby, a police officer with the Metropolitan Police Department ("MPD"), obtained a $53,600 EIDL from the Small Business Association ("SBA") and a total of $41,666.00 in PPP loans from Harvest Small Business Finance, LLC ("HSBF"). When the Defendants learned of the Government's investigation of this conduct, however, they promptly took responsibility for their conduct. For this reason, both Defendants should receive a sentence at the low-end of the applicable United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") range which, if the Court accepts the Government's loss calculation, is 6-12 months at offense level 10 and criminal history category I.

    I.       **PROCEDURAL BACKGROUND**

On April 15, 2024, the Government filed a one-count Information charging the Defendants Owen M. Grigsby and Himmeh Kuawogai with Conspiracy to Commit Wire Fraud, in violation

1

of 18 USC § 371. On April 24, 2024, the Defendants entered a guilty to the Information as part of a plea agreement with the United States. Sentencing has been set for September 10, 2024.

## II.     FACTUAL BACKGROUND

### a. The Defendants

#### i. Defendant Grigsby

Grigsby was employed by the MPD, the primary law enforcement agency for the District of Columbia. Grigsby was assigned to the Overnight (1st watch) as a Patrol Officer for the Fifth District, which is located in the Northeast quadrant of Washington, D.C.  As a Patrol Officer, Grigsby has various responsibilities, including responding to calls to service, conducting traffic stops, detentions, and arrests, and reporting incidents and offenses that occur in his police service area. There is a policy that requires all MPD employees to report all "outside employment" to MPD that could conflict with the execution of their duties. This required MPD employees to fill out form P.D. 180, "Request for Approval to Engage in Outside Employment." MPD employees are also required to report sole proprietorships. Grigsby was aware of the need to file the appropriate outside employment forms with the MPD.

#### ii. Defendant Kuawogai

Kuawogai is the owner, operator, and sole employee of HAK Accounting Services. Kuawogai is a certified public accountant and Internal Revenue Service registered tax preparer. Kuawogai and Grigsby are good friends and relatives.

### b. The Conspiracy

#### i. Owen Grigsby Associates, LLC.

Grigsby and Kuawogai created Owen Grigsby Associates, LLC ("OGA"), a self-registered business. On July 7, 2020, Kuawogai sent Grigsby, who was in the District of Columbia at the

time, an email and link to the Maryland State Express Business Registration and Filings website. Approximately 20 minutes later, Kuawogai sent Grigsby another email with the subject line "IRS Business Registration." Attached to that email was a "Form CP 575G," which indicated that the Employee Identification Number (EIN) 85-1790815 had been assigned to OGA.

Grigsby filed OGA's articles of organization on July 7, 2020. On August 8, 2020, while in the District of Columbia, Grigsby used his cell phone to forward an email to Kuawogai confirming that he registered OGA in Maryland, causing interstate wire communications to be sent in furtherance of the scheme to defraud. Shortly after, Kuawogai responded to Grigsby with an email, which included an attachment showing OGA's articles of organization were certified on August 8, 2020, using the login credentials Grigsby previously provided Kuawogai. The listed address for OGA was Grigsby's primary residence.

On September 28, 2020, Grigsby opened a Bank of America account, ending in -9614, on behalf of OGA. The signature card for this account was signed by Grigsby. In the days leading up to September 28, 2020, Grigsby and Kuawogai communicated extensively about opening OGA's Bank of America account.

OGA had no legitimate purpose and was solely created to obtain EIDL and PPP loans.

### ii. Owen Grigsby Associates, LLC and the Two EIDL Applications

Grigsby, knowingly and willfully, filed two EIDL applications on behalf of OGA containing materially false statements to the SBA. Kuawogai assisted Grigsby with these fraudulent loan applications by providing him with amended and fake documents and explaining the loan application process to him via messaging applications, the phone, and email. Kuawogai assisted Grigsby despite knowing that Grigsby never intended to use the loan funds for a legitimate business purpose.

On October 11, 2020, Kuawogai helped Grigsby apply for an EIDL on behalf of OGA in the amount of $53,600.00. The application claimed that OGA was established on August 18, 2018, which is approximately two years earlier than the actual date of incorporation, had one employee (Grigsby), and fell into the "Finance-Other" business category. The application listed Grigsby as the owner with 100% ownership. It further indicated that in 2019, when OGA had yet to be incorporated, OGA had gross revenues of $107,640.00 with a stated monthly revenue of $8,937.08 and monthly sales of $8,937.08.  While in the District of Columbia, Grigsby used his phone to forward an email from the SBA to Kuawogai that confirmed Grigsby had submitted his application, causing an interstate wire communication.

That same day, October 11, 2020, a contractor working for SBA emailed Grigsby asking for additional information related to OGA's EIDL application. Two days later, on October 13, 2020, the same contractor emailed Grigsby with the following message: "Thank you for your time. You may reply to this message with your business documents and Photo ID."  Grigsby then forwarded this email to Kuawogai.

The next day, on October 12, 2020, Kuawogai responded to Grigsby's email, writing: "Send this and your license to respond to the request[.]" Attached to Kuawogai's email was a PDF of OGA's articles of organization, which Kuawogai had altered. Kuawogai modified the filing date listed on OGA's articles of organization from July 7, 2020, to July 18, 2018. By modifying the filing date to 2018, OGA appeared to the SBA as if it were operational during calendar year 2019, as required to qualify for the loan.

On October 14, 2020, while in the District of Columbia, Grigsby emailed OGA's modified articles of organization and his driver's license to the SBA. Subsequently, Grigsby signed and

4

executed a loan agreement with the SBA for the amount $53,700.00. On October 20, 2020, the SBA disbursed the $53,600.00 loan to OGA's Bank of America Account ending in -9614.

On December 30, 2021, Kuawogai helped Grigsby apply for a modification of his original EIDL on behalf of OGA in the amount of $214,500.00. As part of his modification loan application, Grigsby provided the SBA an Internal Revenue Service (IRS) Form 1040-X, "Amended Individual Income Tax Return" for 2019. As part of those amended tax forms, Kuawogai filled out and provided Grigsby with a Form 1040, "Profit or Loss from Business (Sole Proprietorship)" on behalf of OGA, even though OGA did not exist in 2019. On that form, Kuawogai and Grigsby asserted OGA had a gross income of $107,640 with a profit of $37,854, which was not true. On January 8, 2022, the SBA emailed Grigsby a declination letter informing Grigsby that his loan modification application for $214,500.00 had been declined due to "unverifiable information." Shortly after receiving this email, Grigsby forwarded the email communication to Kuawogai.

### iii. Owen Grigsby Associates, LLC and the Two PPP Loans

On March 10, 2021, Kuawogai and Grigsby exchanged the following text messages while Grigsby was at work in the District of Columbia, causing interstate wire communications to be sent:

> *Kuawogai*: "You want the PPP? I can get you over 40K. Just [throw] me 3k."
>
> *Grigsby:* "How much can you get me"
>
> *Kuawogai*: "At least 41k"

Grigsby, with Kuawogai's help, submitted two PPP loan applications on behalf of OGA containing materially false statements to Harvest Small Business Finance, LLC. Kuawogai assisted

Grigsby with these loan applications by providing him with amended and fake documents and explaining the loan application process to him via messaging applications, the phone, and email.

On April 5, 2021, Grigsby electronically signed a PPP "Borrow Application Form" on behalf of OGA. In this application, Grigsby, knowingly and willfully indicated that OGA was established in January 2018, which, as described above, was approximately 2.5 years earlier than the actual date of incorporation in July 2020. Grigsby also indicated the gross income for the company was $0.00 in 2019, and $103,540.00 in 2020, which was false. On April 15, 2021, while in the District of Columbia, Grigsby submitted a "Promise to Pay Note" to the SBA, indicating that he would repay the PPP loan, causing interstate wire communications to be sent.

As part of this application, Grigsby electronically signed a document acknowledging that he could apply for forgiveness of the loan for any amount spent on a number of business-related expenses, including, payroll costs, rent obligations, utility payments, and operating expenditures. He further certified that that the loan was "necessary to support the ongoing operations" of OGA and that the loan funds would be "used only to retain workers and to maintain payroll or other payments" specifically related to the business, such as rent obligations, utility payments, and operating expenditures.

Also as part of this application, Grigsby provided an IRS Form 1040, "Profit or Loss From Business (Sole Proprietorship)." In that form, he listed OGA as the business name, and indicated that his gross income was $103,540.00, which was false. He further indicated that he had "materially participated" in the operation of the business during 2020, which was also false. SBA approved Grigsby's loan application for OGA for $20,833.00. On or about April 20, 2021, $20,833.00 was disbursed into OGA's Bank of America account ending in -9614.

On April 24, 2021, while in the District of Columbia, Grigsby received a notification from the SBA that OGA's PPP "Second Draw Borrower Application" was ready to be verified and signed. Later that day, Grigsby electronically signed the PPP "Second Draw Borrower Application Form" on behalf of OGA. As Grigsby had indicated in the initial "Borrower Application Form," he once again asserted OGA was established in January 2018, the gross income for the company was $0.00 in 2019, and $103,540.00 in 2020, which was false. Grigsby initialed his understanding that the funds would be used to "retain workers and maintain payroll" or make other business-related expenses, such as rent obligations, utility payments, and operations expenditures. He further initialed his understanding that loan forgiveness would only be provided for the sum of these documented costs, and that not more than 40% of the forgiven amount would be for non-payroll costs. Grigsby submitted the application while in the District of Columbia, causing interstate wire communications to be sent in furtherance of the scheme to defraud. SBA approved Grigsby's "Second Draw" loan application for OGA for $20,833.00. On May 5, 2021, $20,833.00 was disbursed into OGA's Bank of America account ending in -9614.

On June 28, 2021, Grigsby sent Kuawogai a text message: "Bro please don't forget to give me whatever documents I may need to have this stuff forgiven." Kuawogai response shortly after, "I got you bro[.]" On June 26, 2021, Kuawogai, knowingly and willfully, sent Grigsby via email a fake invoice for $9,000 for accounting services. Grigsby used the fake invoice as part of his applications for PPP loan forgiveness.

On August 7, 2021, Grigsby submitted Form 3508S, "PPP Loan Forgiveness Application," on behalf of OGA for the initial $20,833.00 loan from HSBF for OGA. As part of that application, Grigsby affirmed that he had complied with all requirements of the PPP Program rules, including the eligible uses of PPP loan proceeds and the amount of PPP loan proceeds that had to be used

for payroll costs. In fact, Grigsby had not complied with the PPP Program rules and misspent the PPP funds he received as part of his first fraudulent PPP loan application. Kuawogai assisted Grigsby with the loan forgiveness application knowing that Grigsby had not complied with the PPP Program rules.

On August 7, 2021, Grigsby submitted an additional Form 3508S, "PPP Loan Forgiveness Application," on behalf of OGA for the "Second Draw" $20,833.00 loan from HSBF for OGA. As part of that application, Grigsby once again affirmed that he had complied with all requirements of the PPP Program rules, including the eligible uses of PPP loan proceeds and the amount of PPP loan proceeds that had to be used for payroll costs. Kuawogai assisted Grigsby with the loan forgiveness application knowing that Grigsby had not complied with the PPP Program rules.

### iv. Grigsby Pays Kuawogai for his Help Obtaining Fraudulent Loans,

On April 20, 2021, the same day OGA received its first $20,833.00 PPP loan, while in the District of Columbia, Grigsby used CashApp to pay Kuawogai $1,500.00, or approximately 7.5 percent of the total PPP loan OGA received, causing interstate wire communications to be sent. Grigsby paid Kuawogai $1,500.00 in exchange for his help obtaining the fraudulent PPP loan.

On May 5, 2021, the same day OGA received its second $20,833.00 PPP loan, Grigsby again used CashApp to pay Kuawogai 1,500.00, or approximately 7.5 percent of the total second PPP loan OGA received. Grigsby paid Kuawogai $1,500.00 in exchange for his help obtaining the second fraudulent PPP loan.

### v. Grigsby Misuses the Loan Funds

Grigsby quickly depleted the EIDL funds deposited into OGA's Bank of America account through various money transfers and payments for goods and services, in the District of Columbia and elsewhere, that had no legitimate business purpose, including using the funds to pay off debt

held on a Capital One credit card and two personal expense loans held by the Navy Federal Credit Union. He also purchased meals at restaurants, liquor from lounges and shops, jewelry, clothing, and to pay veterinarian clinics and a plastic surgery office.

Although Grigsby affirmed that he had complied with all requirements of the PPP rules, after receiving the PPP loans in OGA's Bank of America account in April and May 2021, Grigsby used the PPP loans for impermissible purposes.

### III.     THE APPLICABLE SENTENCING GUIDELINES

To determine an appropriate sentence, the Court must first accurately calculate each Defendant's advisory Sentencing Guidelines Range. *Gall v. United States*, 552 U.S. 38, 49-50 (2007).

#### a.  Grigsby's Sentencing Guidelines Calculation

The Parties agree on the following Guidelines Calculation:

| Guideline | Description | Offense Level |
|---|---|---|
| § 2X1.1(a)(2), § 2B1.1(a)(2) | Base Offense Level | +6 |
| § 2X1.1(b)(1)(E), § 2B1.1(b)(1)(E) | Loss Amount: $92,494 or $95,266, with the exact loss amount to be determined by the sentencing judge | +6 or +8 |
| § 3E1.1(a) | Acceptance of Responsibility | -2 |
| § 4C1.1 | Adjustment for Certain Zero-Point Offenders | -2 |
| **Total** | | **8 or 10** |

In accordance with the above, depending on the loss amount to be determined by the sentencing judge, Grigsby's Estimated Offense Level will be at least 8 or 10.

#### b.  Kuawogai's Sentencing Guidelines Calculation

The Parties agree on the following Guidelines Calculation:

9

| Guideline | Description | Offense Level |
|---|---|---|
| § 2X1.1(a)(2), § 2B1.1(a)(2) | Base Offense Level | +6 |
| § 2X1.1(b)(1)(E), § 2B1.1(b)(1)(E) | Loss Amount: $92,494 or $95,266, with the exact loss amount to be determined by the sentencing judge | +6 or +8 |
| § 3E1.1(a) | Acceptance of Responsibility | -2 |
| § 4C1.1 | Adjustment for Certain Zero-Point Offenders | -2 |
| Total | | 8 or 10 |

### c. The Correct Calculation of the Loss Amount is $95,266

As indicated in the plea agreement, the parties have agreed that the loss amount is either $92,494 or $95,266. The Government's position is that the loss amount is $95,266, which is the total amount Grigsby received from the SBA and HSBF because of the fraudulent and misleading applications he filed with Kuawogai's help. Defense counsel mistakenly asserts the loss amount should be $92,494 because the remaining balance on the EIDL at the time of the plea agreement was $92.494.

Application note 3(e)(i) of U.S.S.G § 2B1.1 states that the loss amount shall be reduced by the amount of the money returned. The Government recognizes that Grigsby has begun to make payments on his EIDL. Application note 3(e)(i), however, maintains that the loss amount is only reduced if the money returned is prior to the time of detection. Grigsby did not begin making payments on his loan prior to the beginning of the Government's investigation (*i.e.* the time of detection). Based on documents obtained from defense counsel, which have not been verified, Grigsby began making payments on his EIDL on August 8, 2023. The Government's investigation into Grigsby was opened on July 9, 2022.

### IV. The Appropriate Sentence Considering the Factors Set Forth in Section 3553(a)

To determine an appropriate sentence, after the Court accurately calculates each Defendant's advisory Guidelines range, it should consider the various factors set forth in 18 U.S.C.

10

§ 3553(a). *Gall*, 552 U.S. at 49-50. These factors include the nature and circumstances of the offense, the history and characteristics of the Defendant; and the need for the sentence to promote respect for the law, just punishment, and adequate deterrence. 18 U.S.C. § 3552(a). The United States submits that considering these factors, that a sentence at the low end of the applicable Guidelines Range is appropriate and not greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2), which, if the Court accepts the Government's loss calculation, is 6-12 months at offense level 10 and criminal history category I. The United States also submits that imposition of a fine with the applicable Guidelines range is appropriate.

### a. Grigsby

First, the nature and circumstance of the offense support a sentence at the low end of the applicable Sentencing Guidelines. Although Grigsby, an MPD officer whose job required him to uphold the law, violated the public trust and such conduct must be taken seriously, Grigsby took immediate steps to remedy his wrongs. For example, shortly after Grigsby became aware of the Government's investigation, he hired counsel and expressed his desire to pay back the money he received because of his fraudulent and misleading loan applications. He also expressed remorse and a willingness to cooperate with the Government. Thus, the nature and circumstances of the offense do not warrant a variance from the applicable guidelines but do support a low-end guidelines compliant sentence. The second factor that the Court must consider in fashioning an appropriate sentence is the history and characteristics of the defendant. The portrait set forth in the Presentence Report is not one that excuses his behavior, nor provides a reason to depart from the guidelines.

The Defendant's sentence must also reflect the seriousness of the offense to promote rule of law, to provide just punishment, and to provide adequate deterrence. These factors also support

11

a sentence at the low end of the applicable Sentencing Guidelines range. The Defendant appears unlikely to reoffend. He took responsibility for his actions without delay, immediately paid back the remaining balance on his EIDL, and requested the Government seek a restitution order from this Court as soon as possible, demonstrating a respect for the rule of law. And, a significant sentence will provide the necessary general deterrence to other police officers who might be inclined to violate the public trust and commit similar fraudulent offenses.

  b. Kuawogai

First, the nature and circumstance of the offense support a sentence at the low end of the applicable Sentencing Guidelines. Although Kuawogai, a government contractor with a security clearance, violated the public trust and such conduct must be taken seriously, Kuawogai took immediate steps to rectify his wrongs. For example, shortly after Kuawogai became aware of the Government's investigation, like Grigsby, Kuawogai hired counsel and expressed a willingness to resolve the matter. The second factor that the Court must consider in fashioning an appropriate sentence is the history and characteristics of the defendant. The portrait set forth in the Presentence Report too is not one that excuses his behavior, nor provides a reason to depart from the guidelines.

The Defendant's sentence must also reflect the seriousness of the offense to promote rule of law, to provide just punishment, and to provide adequate deterrence. These factors also support a sentencing at the low end of the applicable Sentencing Guidelines range. The Defendant appears unlikely to reoffend and took responsibility for his actions, and a sentence within the applicable guidelines would support principles of general deterrence.

  V.   **FORFEITURE AND RESTITUTION**

The Parties agree that the Court has an obligation to determine whether, and in what amount, mandatory restitution applies under 18 U.S.C. § 3663A. Here, as described above, the loss

a sentence at the low end of the applicable Sentencing Guidelines range. The Defendant appears unlikely to reoffend. He took responsibility for his actions without delay, immediately paid back the remaining balance on his EIDL, and requested the Government seek a restitution order from this Court as soon as possible, demonstrating a respect for the rule of law. And, a significant sentence will provide the necessary general deterrence to other police officers who might be inclined to violate the public trust and commit similar fraudulent offenses.

  b. Kuawogai

First, the nature and circumstance of the offense support a sentence at the low end of the applicable Sentencing Guidelines. Although Kuawogai, a government contractor with a security clearance, violated the public trust and such conduct must be taken seriously, Kuawogai took immediate steps to rectify his wrongs. For example, shortly after Kuawogai became aware of the Government's investigation, like Grigsby, Kuawogai hired counsel and expressed a willingness to resolve the matter. The second factor that the Court must consider in fashioning an appropriate sentence is the history and characteristics of the defendant. The portrait set forth in the Presentence Report too is not one that excuses his behavior, nor provides a reason to depart from the guidelines.

The Defendant's sentence must also reflect the seriousness of the offense to promote rule of law, to provide just punishment, and to provide adequate deterrence. These factors also support a sentencing at the low end of the applicable Sentencing Guidelines range. The Defendant appears unlikely to reoffend and took responsibility for his actions, and a sentence within the applicable guidelines would support principles of general deterrence.

  V.   **FORFEITURE AND RESTITUTION**

The Parties agree that the Court has an obligation to determine whether, and in what amount, mandatory restitution applies under 18 U.S.C. § 3663A. Here, as described above, the loss

to the Government was $95,266. Grigsby paid the remaining balance on the EIDL he received because of the fraudulent and misleading application he filed with Kuawogai's help. As such, the outstanding loss in this case was the $41,666 Grigsby received because of the fraudulent and misleading PPP applications he filed with Kuawogai's help. On July 25, 2024, following the Government's Consent Motion of Presentence Payment, this Court ordered the Clerk of Court to accept pre-sentence payments toward the criminal monetary penalties imposed against the Defendant in this case. On July 29, 2024, Defendant Grigsby made a payment of $41,666.00. As such, the Government does not believe any additional restitution payments are required from Grigsby and Kuawogai.

## VI. CONCLUSION

Grigsby's and Kuawogai's conduct must not be taken lightly. Our government cannot function properly when the actions of Government officials, and those in trusted contracting positions, violate the public trust by violating the law for their own personal gain. The Defendants, however, admitted their wrongdoing and took responsibility for their actions. The Government asks the Court to impose a sentence at the low end of the applicable Sentencing Guidelines.

    Respectfully submitted,

    MATTHEW GRAVES
    United State Attorney

By:    /s/ *Rebecca G. Ross*
    Rebecca Ross (N.Y. BAR #5590666)
    Assistant United States Attorney
    601 D Street N.W.
    Washington, D.C.  20530
    Rebecca.Ross2@usdoj.gov
    (202) 815-8982

## CERTIFICATE OF SERVICE

Rebecca G. Ross, attorney for the United States, hereby certifies that a true and correct copy of this memorandum has been electronically filed and accordingly served upon attorney for the Defendants.

*/s/ Rebecca G. Ross*
Rebecca G. Ross